

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-7-2007

# Caroleo v. Atty Gen USA

Precedential or Non-Precedential: Precedential

Docket No. 05-3762

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Caroleo v. Atty Gen USA" (2007). *2007 Decisions.* Paper 1551.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1551

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 05-3762
_____

SALVATORE CAROLEO,
Petitioner,

vs.

ALBERTO R. GONZALES,
Attorney General of the United States,
Respondent.

_____

On Petition for Review of an Order of
the Board of Immigration Appeals
U.S. Department of Justice
(BIA No. A36-322-567)

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
September 15, 2006


Before: SLOVITER, WEIS and GARTH, Circuit Judges

(Opinion Filed: February 7, 2007)

Mario Apuzzo, Esq.
185 Gatzmer Avenue
Jamesburg, NJ 08831
        *Counsel for Petitioner*

Peter D. Kiesler
Michael P. Lindemann
Ethan B. Kanter
U.S. Department of Justice
Office of Immigration Litigation
P.O. Box 878
Ben Franklin Station
Washington, DC 20044
        *Counsel for Respondent*

_____

OPINION

_____

Garth, Circuit Judge:

Petitioner Salvatore Caroleo seeks our review of a decision of the Board of Immigration Appeals ("BIA") denying his motion for a discretionary waiver of removal pursuant to § 212(c) of the Immigration and Nationality Act ("INA"). Because we agree with the BIA's determination that an aggravated felony/crime of violence – for which Caroleo has been found removable on the basis of his state court conviction

for attempted murder – has no statutory counterpart in § 212(a) of the INA, we will deny Caroleo's petition.

I.

Petitioner Salvatore Caroleo, a 35 year-old native and citizen of Italy, entered the United States as a lawful permanent resident on an Immigrant Visa on April 23, 1978. In December 1993, Caroleo was indicted in New Jersey Superior Court on a number of charges related to an attack he committed on a woman in Middlesex County. By letter dated March 14, 1996, New Jersey State Assistant Prosecutor Robert J. Brass offered Caroleo a plea agreement. The terms of the proposal required Caroleo to plead guilty to three counts: attempted murder, second-degree burglary, and possession of a weapon for unlawful purposes. Under the terms of the plea offer, Caroleo's maximum custodial sentence would be twelve years, with a four-year period of parole ineligibilty.

On November 1, 1996, Caroleo appeared in court with his attorney, Louis C. Esposito, and formally accepted Brass's March 14, 1996 plea offer. On January 6, 1997, Caroleo was sentenced, in accordance with the plea agreement, to a total of twelve years imprisonment. The sentence provided that Caroleo would not be eligible for parole prior to serving four years.

II.

On June 12, 2000, while still incarcerated, Caroleo was served by the INS with a Notice to Appear, charging him with being removable under INA § 237(a)(2)(A)(iii), 8 U.S.C. § 1227(a)(2)(A)(iii), as an alien convicted of an "aggravated felony," as that term is defined in INA § 101(a)(43), 8 U.S.C. § 1101(a)(43). In particular, the Notice to Appear contained two charges relating to two separate aggravated felonies. The first charge alleged that Caroleo had been convicted of an aggravated felony consisting of "a crime of violence [attempted murder] . . . for which the term of imprisonment [is] at least one year." INA § 101(a)(43)(F), 8 U.S.C. 1101(a)(43)(F). The second charge alleged that Caroleo was convicted of the aggravated felony of "a theft offense . . . or burglary offense for which the term of imprisonment [is] at least one year." INA § 101(a)(43)(G), 8 U.S.C. § 1101(a)(43)(G).

A hearing was held before an immigration judge ("IJ") on April 19, 2001. At the hearing, Caroleo, who was represented by counsel, conceded the removal charges, and sought to apply for a discretionary waiver of deportation under INA § 212(c). Counsel for Caroleo acknowledged that the Antiterrorism and Effective Death Penalty Act ("AEDPA"), which took effect in 1996, foreclosed § 212(c) relief to individuals such as Caroleo who had been convicted of aggravated felonies. He argued, however, that Caroleo might still be entitled to relief under the

Second Circuit's decision in St. Cyr v. INS, 229 F.3d 406 (2d Cir. 2000), which held that AEDPA's restriction on § 212(c) relief to aggravated felons could not be applied retroactively to aliens who pled guilty prior to AEDPA's effective date of April 24, 1996. Caroleo conceded that he had pled guilty *after* that date, but asserted that, because his *crime* had been committed in 1993 – prior to the enactment of AEDPA – the principles of St. Cyr should be extended to render AEDPA inapplicable to him.

On April 19, 2001, the IJ issued an oral decision ordering that Caroleo be removed. The IJ rejected Caroleo's argument that the holding of St. Cyr should be extended to aliens like Caroleo whose crime had been committed prior to – but had pled guilty after – AEDPA's effective date. The IJ therefore held that St. Cyr was inapplicable to Caroleo because Caroleo "has conceded that he *pled guilty* on November 1, 1996," which was after the April 24, 1996 effective date of AEDPA.

Caroleo filed his appeal to the BIA shortly after the Supreme Court affirmed St. Cyr on June 25, 2001. On appeal, Caroleo again argued that he was not subject to AEDPA's limitations on § 212(c) relief because his offense was committed in 1993, prior to the enactment of AEDPA. On July 30, 2001, the BIA dismissed the appeal. In its order, the BIA stated that Caroleo "acknowledges that he pled guilty to attempted murder and burglary on or about November 1, 1996," a date after AEDPA had taken effect, and that St. Cyr only applies to aliens who pled guilty prior to AEDPA's effective date regardless of

-5-

when their crimes were committed.

III.

On April 25, 2005, Caroleo filed a special motion with the BIA seeking § 212(c) relief. Caroleo specifically relied upon regulations then recently adopted by the Department of Justice to implement St. Cyr. Those regulations provide that an alien need only have agreed with the prosecutor *informally* to plead guilty prior to AEDPA's effective date to avoid the limitations imposed by AEDPA. In his motion, Caroleo asserted, for the first time, that although his guilty plea was not formally entered in court until November 1, 1996, he had in fact *informally* accepted the prosecution's March 14, 1996 plea offer prior to AEDPA's April 24, 1996 effective date, and that he was therefore eligible to be considered for § 212(c) relief under pre-AEDPA standards. To support this assertion, Caroleo submitted an affidavit from Louis C. Esposito, the attorney who had represented him in his criminal case. In the affidavit, Esposito stated:

> 3. Due to the quantity and quality of the evidence the State had against Mr. Caroleo, he and I never seriously considered a trial. We therefore immediately opened plea negotiations with Assistant Prosecutor Robert J. Brass.
> 4. On March 14, 1996, Mr. Brass made a plea offer. The offer was transmitted in a letter to me

dated March 14, 1996 . . . This offer was accepted by Mr. Caroleo and me shortly after I received the letter.

5. Due to my busy trial calendar and the mental health problems and several mental health hospitalizations experienced by Mr. Caroleo, the offer was not formally acted upon until November 1, 1996, the day Mr. Caroleo entered his guilty plea on the record in the Superior Court of New Jersey . . .

6. The initial offer which we received in writing in Mr. Brass's letter dated March 14, 1996 was never rejected and *accepted as presented almost immediately*. . . .

7. I have a clear recollection of the facts of the case, the plea negotiations with the State, the time that the State made the offer, the time that Mr. Caroleo and I accepted that offer, and would, if required, be willing to testify in open court to this knowledge. *I can state with certainty that we accepted the State's plea offer dated March 14, 1996 before April 24, 1996.*

Caroleo acknowledged that, under amendments to the INA that were in place since 1990, § 212(c) relief was unavailable to any alien who had served a term of imprisonment of at least five years for an aggravated felony. At the time his special motion seeking § 212(c) relief was filed in April 2005,

Caroleo was still incarcerated, and had, to that point, served more than eight years in prison.

Caroleo presented two main arguments that he was nevertheless entitled to relief. First, as a matter of statutory interpretation, Caroleo argued that the time at which to evaluate whether an alien has "served a term of imprisonment of at least five years," thus rendering him ineligible for consideration under § 212(c), is when the alien first seeks to apply for such relief – or at the latest, upon entry of a final order of removal. In the present case, Caroleo had sought to apply for a § 212(c) waiver at the hearing before the IJ on April 19, 2001, at which time he had served fewer than five years. Moreover, Caroleo had still not served five years at the time when the BIA issued its July 30, 2001 order affirming the IJ's decision.

Second, Caroleo argued that, even if he was found to be statutorily barred from relief under § 212(c), the BIA should nevertheless consider his application on equitable grounds. Caroleo asserted that it would be unjust to deny him § 212(c) relief on the basis of his now having served more than five years' incarceration, when he had, in fact, sought such relief prior to having served five years, but had been wrongly denied the opportunity to do so. Caroleo therefore asked the BIA to employ the equitable remedy of nunc pro tunc to consider his § 212(c) application as though he had properly filed it before serving five years.

In an order dated July 7, 2005, the BIA denied Caroleo's motion. First, the BIA ruled that Caroleo was ineligible for a § 212(c) waiver because the aggravated felony convictions on the basis of which Caroleo was found removable – i.e., "crime of violence" and "theft or burglary offense," "do not have a statutory counterpart in section 212(a) of the Act." As a second ground for denying his motion, the order stated: "it appears that the respondent has served more than 5 years of incarceration for his aggravated felony convictions. If this is true, it would also render him ineligible for a section 212(c) waiver." Caroleo then filed this timely petition.

IV.

We have jurisdiction to review constitutional claims or questions of law raised upon a petition for review from a final order of the BIA pursuant to INA § 242(a), 8 U.S.C. § 1252(a) as amended by section 106 of the REAL ID Act of 2005, Pub. L. No. 109-13, Div. B, 119 Stat. 231, 310 (2005). We review such constitutional claims and questions of law de novo. Kamara v. Att'y Gen., 420 F.3d 202, 211 (3d Cir.2005).

In order for Caroleo to establish his eligibility for § 212(c) relief, he must demonstrate (i) that he agreed to plead guilty prior to AEDPA's effective date, and is therefore not subject to AEDPA's absolute bar on § 212(c) relief to

-9-

aggravated felons;[1] (ii) that he is entitled to invoke § 212(c) despite having now served more than five years in prison; and (iii) that the basis for his removal has a "statutory counterpart" ground for exclusion in INA § 212(a). Caroleo must prevail on all three grounds to succeed in his petition – i.e., to establish his eligibility for relief under INA § 212(c).

Were we to reach the first two issues, we would hold that Caroleo should be permitted, on equitable grounds, to apply for § 212(c) relief despite having now served more than five years in prison, and that Caroleo's application should be remanded for a determination of when Caroleo agreed to plead guilty. These issues are mooted, however, by our conclusion that Caroleo is ineligible for § 212(c) relief as a result of his failure to satisfy the "statutory counterpart" requirement under § 212(c) because at least one of the grounds upon which the government seeks his removal – the aggravated felony of "crime of violence" (attempted murder) – does not have a statutory counterpart in INA § 212(a). Thus, even if we held for Caroleo on the first two issues listed above, his petition must nevertheless be denied.

1.

The principle that § 212(c) is available in removal

_____

[1] We consider all three of Caroleo's claims even though the BIA's July 7, 2005 decision deals only with the "five year" and "statutory counterpart" grounds.

-10-

proceedings only where the ground for removal has a "statutory counterpart" ground for exclusion has been firmly in place and consistently applied since at least 1991.[2]  This requirement has also recently been codified in the INS regulations:

> (f) Limitations on discretion to grant an application under section 212(c) of the Act. An application for relief under former section 212(c) of the Act shall be denied if:
>
> . . . .
>
> (5) *The alien is deportable under former section 241 of the Act or removable under section 237 of the Act on a ground which does not have a statutory counterpart in section 212 of the Act.*

8 C.F.R. § 1212.3(f) (emphasis added).[3]  See also Farquharson

_____

[2]  Section 212(c) was repealed in the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub. L. No. 104-208 § 304, 110 Stat. 3009-597 (1996).  Relief under § 212(c) remains available, however, pursuant to St. Cyr, for aliens who have been found removable pursuant to guilty pleas entered *prior* to § 212(c)'s repeal.

[3]  The statutory counterpart requirement has somewhat tortuous origins.  Under its literal terms, § 212(c) offers relief only to aliens who leave the United States and are faced with *exclusion* under the provisions of INA § 212(a).  See INA § 212(c), 8 U.S.C. § 1182(c)("Aliens lawfully admitted for

-11-

permanent residence *who temporarily proceed abroad . . . may be admitted* in the discretion of the Attorney General [despite being faced with exclusion under the provisions of INA § 212(a)]")(emphasis added).

The INS, however, extended § 212(c) relief to a subclass of aliens in *removal or deportation* proceedings: aliens who had left the United States and then were permitted to reenter *despite being excludable*.  This practice yielded an inequitable result by treating differently, removable aliens who had left and reentered the United States and those who had never left.  Under the INS's policy, by the simple expedient of taking a trip abroad, the former class of aliens became eligible for discretionary relief while the latter were not.  (We use the term "removal" instead of "deportation" because the statutory term used in the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA") is "removal").  Finding this distinction "not rationally related to any legitimate purpose of the statute," the Second Circuit in 1976 struck it down as a violation of the equal protection component of the Due Process Clause of the Fifth Amendment.  Francis v. INS, 532 F.2d 268, 272 (2d Cir.1976). The BIA subsequently adopted this reasoning in Matter of Silva, 16 I. & N. Dec. 26 (BIA 1976), and extended § 212(c) relief to removable aliens regardless of whether they had departed the United States since the commission of the act rendering them removable.

Under the rationale of Francis and Silva, certain aliens removable under INA § 237 may receive § 212(c) relief as if

v. United States AG, 246 F.3d 1317, 1324 (11th Cir. 2001); Cato v. INS, 84 F.3d 597 (2d Cir. 1996); Gjonaj v. INS, 47 F.3d 824, 827 (6th Cir. 1995); Komarenko v. INS, 35 F.3d 432, 435 (9th Cir. 1994); Chow v. INS, 12 F.3d 34, 38 (5th Cir. 1993); Leal-Rodriguez v. INS, 990 F.2d 939, 948-52 (7th Cir. 1993); Campos v. INS, 961 F.2d 309, 316-17 (1st Cir. 1992).

Caroleo argues he should not be removed because he satisfies the "statutory counterpart" requirement in that his criminal convictions – for attempted murder, burglary, and unlawful possession of a weapon for an unlawful purpose – constitute "crime[s] involving moral turpitude," one of the grounds for exclusion under INA § 212(a). See 8 U.S.C. §

---

they were subject to *exclusion* rather than *removal*. However, the equal protection rationale underlying the extension of § 212(c) relief to removable aliens only requires that such relief be made available to removable aliens who would be *excludable* for the same reasons that render them *removable* – a situation not true for all aliens facing removal. *Accordingly, § 212(c) relief was not extended to aliens whose removability is based upon a ground for which a comparable ground of exclusion – i.e. a statutory counterpart – does not exist.* See Matter of Wadud, 19 I. & N. Dec. 182, 184 (BIA 1984); Matter of Granados, 16 I. & N. Dec. 726 (BIA 1979).

As we have recognized in note 2, supra, § 212(c) was repealed in 1996, and relief under that statute is now available only to aliens who entered guilty pleas prior to that date.

-13-

1182(a)(2)(A)(i). Our analysis, however, leads to a different conclusion.

2.

Section 237 of the INA, entitled "Deportable Aliens," lists the grounds upon which the Attorney General may order an alien removed. It is in this context that courts look to an alien's *underlying criminal conviction* to determine whether it falls within one of § 237's statutory grounds for removal. For example, an alien will only be subject to removal under INA § 237(a)(2)(A)(iii) if it is determined that the crime for which he was convicted is indeed an aggravated felony as that term is defined in the INA. Likewise, before an alien can be removed for a "crime involving moral turpitude," INA § 237(a)(2)(A)(i), the government must establish that the alien's *underlying conviction* does indeed constitute a crime involving moral turpitude. It is in this context – i.e., determining whether an alien's *underlying conviction* qualifies as moral turpitude thereby establishing *removability* – that some cases have held that crimes like those for which Caroleo was convicted are crimes involving moral turpitude.[4]

---

[4] We have recognized that "it is not uncommon for the DHS to conceive of a single crime as qualifying both as a crime involving moral turpitude and as an aggravated felony." Park v. Gonzales, No. 05-2054, slip op. at 14 (3d Cir. December 28, 2006). However, Park involved only the preliminary question

-14-

The statutory counterpart requirement under § 212(c), on the other hand, presents an entirely different question. In an application for § 212(c) *relief – i.e. a discretionary waiver of removal*, the alien's removability has already been established – i.e., it has already been determined that the underlying crime for which he has been convicted falls within one of INA § 237's grounds for removal. The relevant statutory counterpart inquiry then looks – not to the underlying criminal conviction – but rather to the *statutory ground for removal contained in INA § 237* and whether it has a counterpart in the *statutory ground for exclusion provisions of INA § 212(a)*. Under this categorical analysis, we compare the removal and exclusion provisions *of the INA* to determine whether they are "substantially equivalent" See Bedoya-Valencia v. INS, 6 F.3d 891, 894 (2d Cir.1993); Campos v. INS, 961 F.2d 309, 313 n.6 (1st Cir.1992). If they are, a statutory counterpart has been established.

This distinction between the preliminary question of *removability* under INA § 237 and the statutory counterpart requirement for *relief from removal* under INA § 212(c) leads us to conclude that Caroleo has not satisfied the statutory counterpart requirement. Because while it is true that the *underlying crime* of attempted murder can be characterized as

_____

of the alien's *removability* under INA § 237; § 212(c) *relief from removal*, and the statutory counterpart requirement thereunder, were not in issue. The analyses are different for each of these provisions.

-15-

a crime involving moral turpitude for the purposes of determining *removability*, see, e.g., Yousefi v. United States INS, 260 F.3d 318, 326 (4th Cir. 2001), the statutory counterpart prerequisite for *§ 212(c) relief from removal* focuses, quite differently, upon the *statutory ground for removal* – here an aggravated felony "crime of violence." Komarenko v. INS, 35 F.3d 432 (9th Cir. 1994). And, there is no authority challenging the BIA's direct holding in Matter of Brieva, 23 I&N Dec. 766 (BIA 2005) that the aggravated felony "crime of violence" ground for removal is *not* a statutory counterpart of INA § 212(a)'s "crime involving moral turpitude."

In Komarenko, the court rejected an analysis very similar to the one proposed by Caroleo. Komarenko was convicted of assault with a deadly weapon in violation of California law and sentenced to four years imprisonment. The INS commenced removal proceedings against him for being an alien convicted of the aggravated felony of a "firearms charge," 8 U.S.C. § 1227(a)(2)(C). Komarenko conceded removability but sought a waiver under § 212(c), arguing that his conviction for assault with a deadly weapon had a statutory counterpart in INA § 212(a)'s "crime involving moral turpitude" ground for exclusion.

The court specifically rejected Komarenko's claim that the court must look to the particular facts of his crime, which, he claimed, could be deemed a crime of moral turpitude. *The court held that it is the statutory ground for removal that must have a*

*"substantially identical" counterpart in the statutory grounds for exclusion in order to qualify for section 212(c); the factual basis of the underlying criminal activity is irrelevant.* The court explained that this conclusion follows directly from the equal protection concerns that are the basis for the whole idea of a "statutory counterpart":

> Generally, when courts have found an equal protection violation, the excludability and deportation provisions have been substantially identical. That way, the only distinction between the two classes of persons the statute created was that one class of individuals had traveled abroad and returned, and the other had not. It is this arbitrary distinction that violates equal protection. In the instant case, the provisions are entirely dissimilar, and the distinction between the two classes is not arbitrary or unreasonable.. . . For this reason, the linchpin of the equal protection analysis in this context is that the two provisions be "substantially identical."

Komarenko, 35 F.3d at 435.

The court also addressed Komarenko's argument that, because his conviction for assault with a deadly weapon would also have qualified him for exclusion under INA § 212(a)'s crime involving moral turpitude ground, it would violate equal

-17-

protection to deny him § 212(c) relief from removal proceedings predicated on the same underlying criminal activity. The court rejected this argument, holding that the underlying criminal activity was not relevant; what was important was the statutory ground in the INA under which removal was sought. Whether the underlying crime could also have been the basis for a different ground for removal – one which *does* have a statutory counterpart ground for exclusion – is entirely irrelevant.

> Komarenko claims we must focus on the facts of his individual case and conclude that because he could have been excluded under the moral turpitude provision, he has been denied equal protection. *We decline to speculate whether the I.N.S. would have applied this broad excludability provision to an alien in Komarenko's position. Were we to do so, we would extend discretionary review to every ground for deportation that could constitute "the essential elements of a crime involving moral turpitude." 8 U.S.C. § 1182(a)(2)(A)(i)(II).* Such judicial legislating would vastly overstep our "limited scope of judicial inquiry into immigration legislation," Fiallo v. Bell, 430 U.S. 787, 792, 52 L. Ed. 2d 50, 97 S. Ct. 1473 (1977); Francis, 532 F.2d at 272, and would interfere with the broad enforcement powers Congress has delegated to the Attorney General, see 8 U.S.C. § 1103(a). We decline to

-18-

adopt a factual approach to our equal protection
analysis in the context of the deportation and
excludability provisions of the INA.

Komarenko, 35 F.3d at 435 (emphasis added).

Thus, it was irrelevant to the Komarenko court whether
the alien could have been removed under the moral turpitude
statutory ground for removal. The government had ordered
Komarenko removed for a firearms charge and the court
therefore was required to restrict its inquiry to the question
whether the removal category "firearms charge" is a statutory
counterpart of the moral turpitude ground for exclusion. The
court held that it was not.

The same analysis was more recently applied in two cases
before the BIA, whose interpretation of the INA is entitled to
deference. See Chevron, U.S.A., Inc. v. NRDC, Inc., 467 U.S.
837, 844 (1984), Francois v. Gonzales, 448 F.3d 645, 648 (3d
Cir.2006). In Matter of Brieva, 23 I&N Dec. 766 (BIA 2005),
an alien was ordered removed under the "crime of violence"
aggravated felony provision after having been convicted under
state law for unauthorized use of a motor vehicle. The alien
appealed to the BIA on two grounds. First, the alien asserted
that unauthorized use of a motor vehicle was not a "crime of
violence" aggravated felony for which he could be removed.
Second, the alien argued that even if removable for committing
a crime of violence, he was entitled to § 212(c) relief because

"crime of violence" is a statutory counterpart of INA § 212(a)'s "crime involving moral turpitude." The BIA rejected both of these arguments. The BIA first held that unauthorized use of a motor vehicle qualifies as a crime of violence under the INA, thereby making the alien removable as a result of his conviction for that "aggravated felony." Removability having been established, the BIA then turned to the alien's request for relief under § 212(c). The BIA denied relief, holding that the crime of violence ground for removal is not a statutory counterpart of INA § 212(a)'s "crime involving moral turpitude" ground for exclusion.

The BIA held that, in deciding the question, the court should look not to the underlying crime – i.e., unauthorized use of a motor vehicle, but rather to the *statutory ground* for removal:

> In making the comparison in this case, the relevant question is whether the "crime of violence" aggravated felony ground, as defined in section 101(a)(43)(F) of the Act, is substantially equivalent to a ground of inadmissibility in section 212(a) of the Act.
>
> . . . .
>
> Although there need not be perfect symmetry in order to find that a ground of removal has a statutory counterpart in section 212(a), there must be a closer match than that exhibited by the

-20-

incidental overlap between section 101(a)(43)(F) (crime of violence) and section 212(a)(2)(A)(i)(I) (crime involving moral turpitude). The distinctly different terminology used to describe the two categories of offenses and the significant variance in the types of offenses covered by these two provisions lead us to conclude that they are not "statutory counterparts" for purposes of section 212(c) eligibility.

Matter of Brieva, 23 I. & N. Dec. 766, 773.

The alien in Brieva also argued that, because he *could have* been removed under the "theft offense" provision of the INA, see 8 U.S.C. § 1101(a)(43)(G)(stating that the INA's definition of "aggravated felony" includes "a theft offense . . . for which the term of imprisonment [is] at least one year"), the BIA should look to that ground as a basis for comparison to INA § 212(a)'s moral turpitude provision. The BIA rejected this argument:

The respondent argues that his crime is a "theft offense" for purposes of comparing the moral turpitude ground of inadmissibility. However, the respondent has not been charged with an aggravated felony "theft offense." The comparable ground test for section 212(c) requires that the offense charged, i.e., "crime of

violence," have an analogous ground of inadmissibility. *Whether the respondent could be found inadmissible for a "theft offense" amounting to a crime of moral turpitude is not relevant to the critical question whether the "crime of violence" removal ground has a comparable ground of inadmissibility.*

Id. at 772 n.4 (emphasis added).

In Brieva, the BIA relied on In re Blake, 23 I. & N. Dec. 722 (BIA 2005), in which the BIA had held that the "sexual abuse of a minor" aggravated felony ground for removal, see INA § 101(a)(43)(A), is not a statutory counterpart of INA § 212(a)'s "crime involving moral turpitude" ground for exclusion. In reaching this conclusion, the Blake Court noted that, although some crimes constituting "sexual abuse of a minor" may well constitute moral turpitude, this fact was not determinative under the categorical approach:

As indicated by the approach taken in our decisions in the firearms cases discussed above, whether a ground of deportation or removal has a statutory counterpart in the provisions for exclusion or inadmissibility turns on whether Congress has employed similar language to describe substantially equivalent categories of offenses. Although many firearms offenses may

-22-

also be crimes of moral turpitude, the category of firearms offenses is not a statutory counterpart to crimes of moral turpitude. Similarly, although there may be considerable overlap between offenses categorized as sexual abuse of a minor and those considered crimes of moral turpitude, these two categories of offenses are not statutory counterparts.

In re Blake, 23 I. & N. Dec. 722, 728.

V.

In the present case, Caroleo was convicted in state court of attempted murder, burglary, and unlawful possession of a weapon for an unlawful purpose. Based upon the attempted murder conviction, the government charged Caroleo with being subject to removal under the "crime of violence" aggravated felony ground contained in INA § 237.[5] Caroleo does not

_____

[5] Because we find that the crime of violence ground for Caroleo's removal has no statutory counterpart in INA § 212(a), thus rendering him ineligible for relief under § 212(c), we do not reach the question whether the second ground upon which the government seeks to remove Caroleo – a "theft offense . . . or burglary offense for which the term of imprisonment [is] at least one year," 8 U.S.C. § 1101(a)(43)(G) – has a statutory counterpart in INA § 212(a).

dispute that his attempted murder conviction is a crime of violence under the INA; indeed, he concedes that he is removable on that basis.

Caroleo's application for section 212(c) relief was properly denied. Under Matter of Silva, 16 I. & N. Dec. 26 (BIA 1976) and subsequent authority, Caroleo is not entitled to relief under § 212(c) unless the statutory basis for his removal – i.e., crime of violence, has a statutory counterpart ground for exclusion in INA § 212(a). As Komarenko, Brieva, and Blake make clear, the underlying crime for which Caroleo was convicted plays no role in this inquiry. It is therefore irrelevant that Caroleo's conviction for attempted murder could have subjected him to removal as an alien convicted of a crime of moral turpitude under INA § 237(a)(2)(A)(i). See, e.g., Yousefi, 260 F.3d at 326. Once the government has categorized his offense as a "crime of violence" in removal proceedings, and that categorization has been upheld, our § 212(c) inquiry focuses on whether *this statutory ground* for removal is substantially equivalent to any of the statutory grounds for exclusion contained in INA § 212(a).

The BIA has held that the "crime of violence" aggravated felony ground for *removal* under INA § 237 is not "substantially equivalent" to INA § 212(a)'s "crime involving moral turpitude" *ground for exclusion* such that the two can be considered statutory counterparts. Brieva, 23 I. & N. Dec. at 773.

-24-

We recognize the seeming illogic of a scheme under which the crime of attempted murder may constitute a crime involving moral turpitude rendering the alien removable, while the same alien, if charged with being removable under INA § 237's aggravated felony "crime of violence" ground, is ineligible for § 212(c) relief because a "crime of violence" is not a statutory counterpart of a "crime involving moral turpitude." However, this is the result of an administratively engrafted "statutory counterpart" requirement and its interpretation by the BIA in <u>Brieva</u> and the Ninth Circuit in <u>Komarenko</u>, and we find these authorities persuasive. Because we hold that Caroleo's conviction of attempted murder is an aggravated felony "crime of violence" that has no statutory counterpart in a crime involving moral turpitude we will deny Caroleo's request for § 212(c) relief and thus his petition.

<u>WEIS, J.</u>, <u>Concurring</u>.

I concur in the denial of the petition of review. Although I do not accept some portions of the majority opinion of my distinguished colleagues, I agree that the dispositive issue is the application of the comparability test, a policy adopted by the immigration authorities.

Although the test has been used for some decades, it has only recently been codified in a regulation. <u>See</u> 8 C.F.R. § 1003.44, 1212.3(f)(5) (effective Oct. 28, 2004). Briefly stated, in order to qualify for a waiver under section 212(c) of the

-25-

Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(c), the ground of deportation must have a counterpart in section 212(a).

The substance of the inquiry has been expressed in a variety of ways, but the term "ground" has not been clearly defined by the courts. In my view, the comparability should be that between the grounds specified in INA section 237(a), 8 U.S.C. § 1227(a), and the grounds listed in section 212(a). Therefore, the alien must first show that the underlying conviction constitutes a deportable offense under section 237(a) and then demonstrate the comparability of that ground with one in section 212(a).

I agree with the majority that an aggravated felony crime of violence has no statutory counterpart in section 212(a). However, as we noted in Park v. Gonzales, No. 05-2054, 2006 WL 3821408, at *6 (3d Cir. December 28, 2006), a conviction may be categorized as both an aggravated felony and one of moral turpitude as those terms are used in the immigration law. Where a conviction does so qualify, the counterpart test should be applied to both the aggravated felony and moral turpitude grounds for deportation in section 237(a).

Petitioner argues that his conviction was one of moral turpitude that has an explicit counterpart in section 212(a). Therefore, he contends that he is eligible for a discretionary waiver under section 212(c). He thus would have the

-26-

comparability exist between the underlying conviction and section 212(a).

The petitioner's argument is flawed. Assuming that the conviction was for a crime of moral turpitude, the next and crucial question is whether it was a ground of deportation under section 237(a). I believe this case presents a situation where the petitioner's underlying conviction for attempted murder can be both a crime of violence and moral turpitude.[6]

Although crimes of moral turpitude are often not ones that allow for easy and specific definitions, attempted murder fits neatly within the tests we formulated in DeLeon-Reynoso v. Ashcroft, 293 F.3d 633 (3d Cir. 2002) and Partyka v. Attorney General, 417 F.3d 408 (3d Cir. 2005). There we cited vileness, depravity, and reprehensible acts deliberately committed as characteristic of moral turpitude. See, e.g., Ascencio v. INS, 371 F.3d 614 (11th Cir. 1994) (BIA categorized attempted murder as crime of moral turpitude).

That said, however, petitioner's crimes do not constitute deportation grounds for moral turpitude. INA

---

[6]The majority did not reach the question whether the petitioner's second ground of removal for a theft offense has a statutory counterpart in INA section 212(a), but using the categorical approach it would appear that the petitioner's theft offense would also constitute a crime of moral turpitude.

§ 237(a)(2)(A)(i)(I) specifically states that "any alien who is convicted of a crime involving moral turpitude committed within five years . . . after the date of admission . . . is deportable."[7]  See 8 U.S.C. § 1227(a)(2)(A)(i)(I).   Because petitioner committed the crimes here on a day more than five years after originally being admitted to this country and has not left the country and been readmitted during that time, his convictions do not satisfy this provision.

Therefore, although petitioner committed crimes of moral turpitude, the government had no authority to deport him on that basis.  His moral turpitude conviction could not be a "ground" for deportation, and therefore the issue of comparability with section 212(a) is simply not applicable.

Moreover, because he could not be deported on the ground of moral turpitude, there is no need for petitioner to obtain a waiver on that basis under section 212(c). In effect, he has already received the substance of that benefit because the moral turpitude deportation provision no longer applies to him since five years had elapsed following his admission.  In short, he could not receive a waiver of deportation for a moral

_____

[7]Subsection (iii) provides that an alien who is convicted of two or more crimes involving moral turpitude not arising out of a single scheme of criminal misconduct . . . is deportable.  Because both convictions in this case resulted from a single incident, that provision is not applicable to this case.

turpitude conviction when the passage of time had already prevented deportation.

I agree with the majority that, although petitioner has asserted other substantial defenses, in the end the comparability issue trumps those contentions.

Accordingly, I join in the denial of the petition for review.